[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO REOPEN JUDGMENT
The defendant has moved to vacate the judgment entered against him in the underlying action which sought to dissolve a Connecticut General Partnership. The defendant was a general partner in "Bran Park Associates."
In this motion, the defendant raises a variety of claims including: the court lacks in personam jurisdiction over him, fraud on the part of the general partner who sought the dissolution, and that his motion to re-open was timely filed and should be granted.
The court bi-furcated the hearing on the motion, deciding that the jurisdictional issues would be addressed first and should the defendant prevail, the fraud issue would be explored at a subsequent hearing.
 DISCUSSION I
The defendant's first claim is that the service on him at his usual place of abode was invalid because that address was not his "usual place of abode."
At issue is a service of process reflected in a sheriff's return dated December 5, 1995. That return reads as follows: "Then and there by virtue hereof, I served the within named CT Page 16424 defendant, by leaving it at his usual place of abode, 2 Depot Street, 1st Floor, Milford, Connecticut, as I verified his address with SNET and D.M.V., a true and attested copy of the original Application, Order to Show Cause, Writ, Verified Complaint and Citation with my endorsement thereon.
The defendant Jaser then testified that 2 Depot Street was not his usual place of abode, but that 29 Seaview Avenue in Milford was. He did concede that he was "in and out of there" (Seaview Avenue) because of a domestic dispute.
The plaintiff presented a certified copy of a voter registration record of the City of Milford. This record indicates that Mr. Jaser executed a registration certificate on August 4, 1995, under penalty of fine and imprisonment, in which he stated he resided at 2 Depot Street. That record also reveals Mr. Jaser signed a Register of Voters canvass form dated March 26, 1999 changing his residence from 2 Depot Street to 233 Wheeler's Farm Road. The voting record of Mr. Jaser shows he voted in November elections in 1995, 1996, 1997 and 1998, all on the basis of the August 1995 registration noted above and which indicates hisprevious voting residence to be 29 Seaview Avenue.
The plaintiff also presented the testimony of Attorney Andrew Apicella, former law partner of Mr. Jaser. He stated that he helped Mr. Jaser move into the first floor apartment at 2 Depot Street and because that building was directly behind the office building (69 Broad Street) occupied by the partnership, he was able to observe Mr. Jaser's coming and going to 2 Depot Street, leaving his car there and garaging it there. While it was obvious to the court that Mr. Apicella and Mr. Jaser did not part company amicably, Mr. Apicella presented himself as a credible witness and cross examination left his testimony intact.
The evidence offered by the defendant, other than the testimony of Mr. Jaser, hardly rebuts the claim of his residence at 2 Depot Street. At best, these exhibits show he used his law office address with his insurance carrier and the gas and electric bills at 2 Depot Street were in his mother's name.
On the basis of the evidence presented and heard, the court concludes that the defendant George Jaser's usual place of abode on or about December 5, 1995 was 2 Depot Street in Milford. It necessarily follows that process served on him at that address would constitute valid service. CT Page 16425
 II
Addressing the issue of the timeliness of the defendant's motion to re-open, the court file provides a significant chronological sequence of events.
Following the entry of an interim order by the court on December 18, 1995, the plaintiff on June 14, 1996 moved for a default against Mr. Jaser and the motion was granted on July 15, 1996.
A copy of the motion for default was mailed to Mr. Jaser at his law office, 69 Broad Street. Notice of the default and final judgment was sent to Mr. Jaser by the clerk on July 26, 1996.
Pertinent to the defendant's claim that this whole process was unknown to him until November 18, 1996 is the fact that a motion for default against this defendant was filed on February 26, 1996. Although that motion was denied, a military affidavit was filed in connection with it and that affidavit indicates the affiant concluded Mr. Jaser was not in the military service on the basis of a conversation with his secretary at his office, 69 Broad Street. This same affiant signed the military affidavit to support the June 14, 1996 motion and that affidavit describes a conversation with Mr. Jaser's "assistant" on June 12, 1996.
Then, on October 30, 1996 a motion for order was filed by the plaintiff but it was not certified to the defendant Jaser. Nevertheless, Judge Hodgeson ordered that he be served with notice and he was served on November 18, 1996. Though that notice gave until 5:00 p. m. on the following day, November 19, for objections to be filed, Mr. Jaser testified that:
"I got served in the afternoon and they said you are supposed to be here the next day. I did not look at it at that time. I did file an appearance. I sent in an appearance, I remember that, and the motion for an extension of time."
From this point on Mr. Jaser did nothing to object to the proposed order of which he admits having notice and no jurisdictional defect was raised until September 19, 1997. Prior to that date a further extension of time was requested, in August. CT Page 16426
On the basis of this tortuous and dilatory course of action, the court concludes:
 1. By his failure to challenge the court's jurisdiction within 30 days of his appearance on November 19, 1996, the defendant is deemed to have waived any alleged defect; Conn. Practice Book § 10-30.
 2. Similarly, he did not move to reopen the default within four months as required by Practice Book § 17-43.
 3. The motion/motions relied on by the defendant do not comply with Section 52-212 of the Connecticut General Statutes (and § 17-43, supra) in that they are not "verified by the oath of the complainant or his attorney . . ."
 4. The defendant's general indifference and lack of diligence over a substantial period of time do not constitute the "excusable neglect" delineated in Trichilo v. Trichilo, 190 Conn. 774 (1983). This defendant has engaged in a pattern of delay best verified by recourse to the file and court records which reflect his is pro se appearance, delays requested to hire counsel, firing counsel and delays in hiring new counsel.
 CONCLUSION
This fiasco has endured too long. The defendant George Jaser's motion to re-open and vacate are denied.
Anthony V. DeMayo Judge Trial Referee